**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

WILFREDO SEGARRA-MIRANDA

    Appellant,

v.

MEISY A. PEREZ-PADRO, et al.

    Appellees.

**Civil No. 12-1026 (SEC)**

**OPINION AND ORDER**

    After six years of pretrial proceedings and a two-week trial, the Chapter 7 Trustee filed this appeal seeking to vacate the bankruptcy court's dismissal of his three remaining causes of action: the first, for breach of fiduciary duties; the fifth, for prepetition transfers for less than equivalent value; and the sixth, for collection of loans made to insiders.[1] Defendants/Appellees ("Defendants") are two former directors and shareholders of now defunct Almacenes Riviera, Inc. ("ARI"), a family-owned corporation that operated several retail department stores in Puerto Rico. Although the Trustee has launched a myriad of appellate challenges, most of them presume error in the bankruptcy court's conclusions that (1) certain claims within the first cause of action were time barred; and (2) the Trustee failed to carry his burden of proof as to his claim of fiduciary duty violations for payment of illegal dividends as well as to the fifth and sixth causes of action. Because the Trustee failed to identify a reversible error in those conclusions, the Court need not reach any of the other issues raised, and the bankruptcy court's decision is **AFFIRMED**.

---

    [1] All other causes of action were either voluntarily dismissed or settled before trial.

**Factual and Procedural Background**

*The Events Preceding the Trial*

Incorporated in 1972, ARI's founding shareholders were Jose Perez Cordera (held 78% of ARI's shares) and Aldo Gonzalez-Alvarez ("Gonzalez").[2] As the business prospered over the years, affiliated entities were incorporated and additional stores were opened around Puerto Rico. In 1994, after twenty-two years at ARI's helm, Perez Cordera passed away leaving his majority stake to three heirs: 33.5% to his widow Maria P. Cordera ("Maria Cordera"), 22% to his daughter Meisy Perez-Padron ("Perez"), and 22% to his son Jose P. Cordera, Jr. ("Cordera Jr."). Thereafter, Gonzalez, Perez, Maria Cordera, and Cordera Jr. continued running ARI's affairs, as both corporate managers and board directors.

In March of 1995, ARI issued a Corporate Resolution authorizing its then Vice President Cordera Jr. to execute a $95,000 option to purchase real property (the "Real Property") with a price of $1,900,000. All board members but Gonzalez believed the Real Property to be suitable for a shopping center with an ARI store, an automotive store such as Pep Boys, and a series of other small supporting independent stores. Accordingly, the option contract was promptly executed; and October 30, 1995 was set as its expiration date. The process to obtain the requisite governmental approvals to build the shopping center began immediately. But the government denied each proposal ARI presented. Therefore, when October 30 came around, ARI had yet to decide whether to execute the option, and it paid an additional $5,000 to extend the expiration date until November 30, 1995.

On November 28, 1995, Maria Cordera, Perez, and Cordera Jr. incorporated YSIEM, S.E. The next day, Gonzalez executed a Consent and Release Letter on behalf of ARI, authorizing YSIEM to purchase the Real Property upon the reimbursement of the option price ARI had paid. The same day Gonzalez also released any interest he could claim in YSIEM.

---

[2] Gonzalez, the godfather of Jose Cordera's daughter, acquired a minority participation in ARI in 1976, while the business was still in its infancy.

Then, the date the option was set to expire, YSIEM purchased the Real Property for the $1,900,000 stated price, even though ARI had the wherewithal to acquire it.

Months later, in March or April of 1996, YSIEM and Pep Boys entered into a lease agreement through which Pep Boys agreed to build, at its own expense, an automotive service center and retail store on the Real Property. Their contract was amended several times in the months that followed. And it became a public instrument in January 1997, binding YSIEM and Pep Boys to a long-term lucrative business relationship.

ARI's financial affairs deteriorated in the interim. Late in November 1996, a violent explosion occurred across the street from its main store and headquarters, forcing a two-week operational shutdown at the site. The explosion also caused physical damages to ARI's store, requiring external financing to cover expensive emergency repairs.

Misfortune stroke again soon thereafter. In the spring of 1997, ARI's Comptroller detected that Cordera Jr. (ARI's President at the time) had misappropriated $441,676.99 in corporate funds. The Comptroller immediately apprised all other shareholders, and Cordera Jr.'s employment was eventually terminated. The shareholders also decided to liquidate Cordera Jr.'s ownership stake at ARI, and, after months of internal deliberations, they executed a so-called Stock Purchase Agreement (the "Purchase Agreement") for that purpose. The Purchase Agreement called for ARI to acquire Cordera Jr.'s shares at a $2,000,000 price, payable in four installments: a first installment of $500,000, less a write-off of the amount Cordera had misappropriated; and three subsequent installments of $500,000, the last payable in January 2000. Although the Comptroller objected to the payment plan, the shareholders (Gonzalez, Perez and Maria Cordera) approved it, and it went into effect automatically.

Some time later, ARI entered into a two-tier financing agreement with Banco Bilbao Vizcaya Argentaria ("BBVA") comprised of a $800,000 term loan and a $1,200,000 line of credit. Another term loan followed in December 1999, this one from Hamilton Bank in the amount of $2,500,000. In February 2000, BBVA increased its line of credit from $1,200,000

to $2,000,000. Hamilton Bank did the same in December 2001 through a refinancing that provided ARI's with an addition $300,000.[3]

ARI and its affiliates filed for Chapter 11 bankruptcy protection in October 2002, amidst a downturn in both sales and working capital, and apparently unable to obtain additional external financing.[4] But reorganization attempts came to a halt in 2004, when the Chapter 11 bankruptcy case was converted to a Chapter 7 liquidation, and Wilfredo Segarra Miranda became the Chapter 7 Trustee. The instant complaint followed in August 2005.

*The Trial and the Bankruptcy Court's Rulings*

The complaint reached the trial stage six years later, in the summer of 2011.[5] By then, the Trustee had settled all claims against Gonzalez, and the causes of action before the bankruptcy court were the ones underlying this appeal. Gonzalez, Perez, and Cordera Jr. were among the fifteen witnesses who testified during the two-week trial. The bankruptcy court also heard testimony from ARI's Comptroller, its auditors and accountants, the parties' accounting experts, and from a court appointed examiner.

Post-trial submissions came next, the court issuing a specific post-trial order, which included the following two questions:

> 1. In light of Stern v. Marshall, - - - S.Ct. - - - -, 2011 WL 2472792 . . . does this Court have jurisdiction to enter a final judgment on these causes of action?

---

[3] The Trustee's complaint alleged that the foregoing financing was improperly and fraudulently undertaken while ARI was insolvent. Adv. No. 05-00186, Docket # 147, ¶¶ 157-66. He therefore claimed that Defendants had violated their fiduciary duties by engaging in those transactions. Id. The bankruptcy court denied such a claim, and the Trustee did not appeal that determination.

[4] At the time, Gonzalez, Perez, and Maria Cordera continued as ARI's directors and shareholders; they had the following participation: Gonzalez 28.85%, Perez, 28.20%, and Maria Cordera 42.95%.

[5] Maria Cordera passed away in 2007. Perez and Cordera Jr. were her only heirs; today each holds 50% of YSIEM's shares.

    2. Whether the remaining causes of action pled in the Third Amended complaint are time barred?

In re Almacenes Riviera Inc., Chapter 7 No. 02-10788, Adv. No. 05-00186, Docket # 450.

    The bankruptcy court's opinion followed a month after the post-trial submissions were on file. With brief affirmative remarks about its jurisdiction to enter a final judgment, the court moved on to its second post-trial inquiry. On that front, it determined that the events underlying most of the claims of fiduciary duty violations had occurred after the three-year statute of limitations applicable under Puerto Rico's Corporate law.

    In pertinent part, the bankruptcy court's analysis began with the Trustee's claim that Defendants had violated their fiduciary duties by transferring to YISEM the option to purchase the Real Property, and thus relinquishing the opportunity to pursue the business venture with Pep Boys. According to the Trustee, such a claim was still alive because "defendants [had] failed to meet their burden of showing full disclosure of the opportunity to Mr. Gonzalez." Adv. No. 05-00186, Docket # 458, p. 5. The bankruptcy court, however, concluded otherwise, noting first that Gonzalez had (1) signed the so-called Release Letter because he thought the acquisition was a bad business idea for ARI; and (2) participated in meetings where the possible venture with Pep Boys was discussed. Adv. No. 05-00186, Docket # 458, pgs. 31-32. The court then added:

> [A]ny claim against Maria Cordera, Perez or Cordera [Jr.] related to YSIEM's purchase and development of the [Real Property] is time barred. Contrary to the trustee's argument that the leasing opportunity was not fully disclosed to Gonzalez, the Court finds that he had actual knowledge of the potential lease agreement with Pep Boys and was not interested in the venture. Gonzalez received no financial benefit from the transaction and if he felt that the development of the property was a business opportunity taken from ARI group, Gonzalez could have filed suit against the remaining defendants for breach of fiduciary duty as early as November 30, 1995, the date of the property purchase, or certainly by the time that the lease agreement became a public instrument in 1997. As a result, any action for this alleged breach expired as early as 1998, and at the very least in the year 2000.

Id.

6

Next, the bankruptcy court took on the Trustee's allegation that Defendants had breached their duty of care when buying out Cordera Jr. through the Purchase Agreement. The Trustee's post-trial submission stated that Defendants had failed to point out any "event on the record that would have lead the **trustee or any of the creditors** of the ARI group to have discovered the damage caused to the corporation by the Cordera [Jr.] stock purchase." Adv. No. 05-00186, Docket # 458, p. 3 (emphasis added).[6] The bankruptcy court, however, rejected the proposition underlying the Trustee's argument—that is, that Defendants owed fiduciary duties to ARI's creditors—concluding that (1) ARI was solvent when the Purchase Agreement was entered into; and (2) that the financial obligation incurred therein did not draw ARI into insolvency. Adv. No. 05-00186, Docket # 458, pgs. 36-41. Specifically, the court relied on testimony from ARI's internal accountant stating that ARI was solvent while it fulfilled its obligations under the Purchase Agreement, and that the payments made to Cordera Jr. had no significant impact on ARI's working capital. Id., p. 38. It also underscored ARI's inauguration of a new store in 1998, its financial statements showing profits in 1998 and 1999, and ARI's multi-million dollar real estate holdings. Id., p. 41.

After discarding the Trustee's insolvency contentions, the bankruptcy court then noted that all shareholders had consented to, and thus knew about, the Purchase Agreement. Id., p. 39. It therefore determined that any of ARI's shareholders "could have sued on behalf of ARI group to challenge the decision or the terms of the Stock Purchase Agreement, if they felt that it impaired or harmed ARI group, as early as 1997 or certainly by late 2000 . . . ." Id., p. 39. Accordingly, the court concluded that the Trustee's suit had come two years too late, even

---

[6] The Trustee premised this argument on the so-called deepening insolvency theory, which provides creditors with standing to assert claims for any fiduciary duty violation that occurs while the corporation is insolvent. See N. Am. Catholic Educ. Programing Found., Inc. v. Gheewalla, 930 A.2d 92 (Del. 2007). Whether this theory, which the Puerto Rico Supreme Court has yet to adopt, would apply in Puerto Rico is a question that this Court need not address at this time, since the Trustee's appeal fails for much simpler reasons. Nevertheless, the Court notes that the language of P.R. Law Ann. tit. 14, § 3786 contains language that might close application of this theory in Puerto Rico.

under the most favorable scenario possible. Id.[7]

Last came the analysis regarding the Trustee's claims of fiduciary duty violations in the payment of illegal dividends as well as the analysis for the fifth (improper prepetition transfers) and sixth (collection of loans to insiders) causes of action. Id., pgs. 44-50. Concerning the payment of illegal dividends, the court concluded "that nothing in the third amended complaint, stipulated facts, testimony at trial or the trustee's post-trial brief supports a conclusion that the payment of dividends . . . was a violation of fiduciary duty."  Id., p. 46. A similar conclusion ensued about the fifth and sixth causes of action. Regarding the former, the court concluded that there was no "preponderance of evidence that ARI received less than reasonable equivalent value in exchange for such transfers." Id., p. 48. The court did the same with the latter, finding the Trustee's submissions insufficient to prove that the "alleged transfers occurred, were loans, or [were] otherwise recoverable." Id., p. 50.

*The Appeal*

Unsatisfied with the rulings by the bankruptcy court, the Trustee filed the present appeal, raising sixteen points of error. Docket # 14. Among other things, he contends that the bankruptcy court (1) lacked jurisdiction to enter a final judgment deciding the case; (2) omitted relevant stipulations of fact and/or material facts that were clear from the record; (3) erred in applying the relevant statutes of limitations; (4) erred in its application of the law when rejecting his illegal dividends claim; and (5) misunderstood the record in connection with his fifth and sixth causes of action. Id.[8] Defendants opposed each of these contentions,

---

[7] The Court also discarded as time barred the allegation that Defendants had breached their duty of care by failing to comply with a term-loan agreement executed by ARI. The Trustee failed to address this issue in both his post-trial submission to the bankruptcy court and his initial briefing to this Court. The Trustee nevertheless challenges the ruling with a three-sentence argument in his reply memoranda. See Docket # 20, p. 23. Needless to say, much more is needed to validly present an appellate challenge.

[8] The Trustee's submission follows no distinct pattern at all—the Trustee's statement of issues was neither ordered according to the causes of action raised in his Third Amended

and both parties supplemented their initial submissions with reply memoranda. Below, the Court addresses each point of error at issue in turn.

**Standard of Review**

On appeal, a district court may affirm, modify, or reverse a bankruptcy court's judgment, or remand with instructions for further proceedings. Fed. R. Bkrtcy. P. 8013. The scope of this task, however, varies depending on whether the appeal revolves around findings of facts or conclusions of law. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bkrtcy. R. 8013; see also Fed. R. Civ. P. 52(a)(6). Accordingly, under the "clear erroneous" standard, a reviewing court will only reverse a prior decision if it has the "definite and firm conviction that a mistake has been committed." In re the Bible Speaks, 869 F.2d 628, 630 (1st Cir. 1989) (citing Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (finding no clear error where conclusion of the bankruptcy court and the facts underlying it were supported by the record.). And if the finding of fact "is based on [the judge's] decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." Anderson, 470 U.S. at 574.

In contrast, conclusions of law are reviewed de novo. Prebor v. Collins (In re I Don't Trust), 143 F.3d 1, 3 (1st Cir. 1998). This standard of review calls for the district court to analyze and solve issues from the same perspective of the bankruptcy court, as if the issues

---

Complaint, nor followed the discussion laid out by the bankruptcy court. To make matters worse, many of the Trustee's arguments are disjointed, repetitive, and devoid of both record and legal citations. For the sake of clarity, the list of issues just laid out omits unnecessary repetition as well as discussion of unsupported arguments. Moreover, it encompasses dispositive issues only; that is, the Court does not reach any challenge that presumes error in the foregoing lists of issues, because, as explained below, the Trustee has failed to point to any reversible error by the bankruptcy court concerning those issues.

were to be decided for the first time. <u>Water Keeper Alliance v. U.S. Dept. of Defense</u>, 271 F.3d 21, 31 (1st Cir. 2001).

Of course, to be reviewable on appeal, the issue at play (whether of fact or law) must had been properly preserved during the challenged proceedings. <u>Pomerleau v. West Springfield Public Schools</u>, 362 F.3d 143, 146 (1st Cir. 2004) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."). In other words, where the appellant raises an issue for the first time on appeal, the matter is generally deemed waived, unless he demonstrates either "clear and gross injustice" or "plain error." <u>Muñiz v. Rovira</u>, 373 F.3d 1, 5 (1st Cir. 2004). The former standard applies to "sufficiency of the evidence" challenges and requires the appellant to show that no reasonable trier of fact would have reached the appealed conclusions, while all questions of credibility and reasonable inference are drawn against him. <u>U.S. Morales-Machuca</u>, 546 F.3d 13, 20 (1st Cir. 2008). The latter, comes into play if legal conclusions are questioned and calls for a showing "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the [appellant's] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings." <u>Muñiz</u>, 373 F.3d at 5.

**Applicable Law and Analysis**

*I. The Jurisdictional Challenge*

The Court begins its analysis with the Trustee's jurisdictional challenge. Settled law unequivocally empowers bankruptcy courts to enter final judgments in non-core proceedings when all parties consent. 28 U.S.C. § 157(c)(2). In this case, the bankruptcy court's post-trial order specifically summoned the parties to state any objections regarding its jurisdiction to enter a final judgment in the case. The Trustee posed no objection and instead provided the court with the following bare statement:

> The cause of action before this court, with the exception of claims under

> § 548, are non-core, related proceedings. The bankruptcy court may enter a final order or judgment with respect to non-core, but related proceedings if all parties consent. Plaintiff understand that the holding in <u>Stern v. Marshall</u> does not otherwise impact the Court's jurisdiction in respect to these causes.

Adv. No. 05-00186, Docket # 458, p. 2. By failing to object when given the opportunity to do so, the Trustee tacitly consented to the entry of a final judgment by the bankruptcy court.

The Trustee, however, now attempts to reverse course citing <u>Stern</u>, 131 S.Ct. at 2614-2615 n. 8, for the proposition that "consent must be expressed, not by implication." Docket # 20, p. 2. His ninth-inning efforts fall far short. First, <u>Stern</u> nowhere establishes the proposition the Trustee advances, and the First Circuit has ruled tacit consent sufficient on this front. See <u>Sheridan v. Michels (In re Sheridan)</u>, 362 F.3d 96, 100-103 (1st Cir. 2004). Many other circuit courts have ruled in like fashion. See <u>Beitel v. OCA, Inc. (In re OCA, Inc.)</u>, 551 F.3d 359, 368 (5th Cir. 2008); <u>Mann v. Alexander Dawson, Inc. (In re Mann)</u>, 907 F.2d 923, 926 (9th Cir. 1990); <u>Men's Sportswear, Inc. v. Sasson Jeans, Inc. (In re Men's Sportwear, Inc.)</u>, 834 F.2d 1134, 1137-38 (2d Cir. 1987); <u>but see</u> <u>Home Ins. Co. v. Cooper & Cooper, Ltd.</u>, 889 F.2d 746 (7th Cir. 1989). Second, some subsections of § 157 explicitly require that consent be expressed—for example, under § 157(e), a bankruptcy judge may hold a jury trial "with the *express* consent of all the parties"—while § 157(c)(2) nowhere does, referring instead to the "consent of all the parties involved." Therefore, the Trustee's proposition also runs afoul of the oft-quoted maxim that "when Congress uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, 711 n.9 (2004).[9]

---

[9] In light of the bankruptcy court's unequivocal post-trial jurisdictional inquiry, there appears to be an issue about whether the Trustee's bare and elusive post-trial response, together with the underlying appellate challenge, constitute sanctionable litigation gamesmanship. This issue, however, is not before the Court at this juncture.

*II. Omissions of Material Facts*

The Trustee's point of error concerning omissions of factual stipulations and/or material facts of record also misses the mark. His submission on this issue cites over seventy statements of facts allegedly ignored (see Docket # 14, pgs. 21-24), but nowhere explains or argues the significance of any of those facts to the legal claims at play.  Success on appeal requires a lot more. See United States v. Hughes, 211 F.3d 676, 684 n.6 (1st Cir. 2000) ("It is a settled appellate rule that issues adverted to in a perfunctory manner [and] unaccompanied by some effort at developed argumentation are deemed waived."). Notwithstanding, a cursory review of the bankruptcy court's opinion reveals that many of the facts brought forth by the Trustee were expressly contemplated. For example, the Trustee offers the following statement of fact as one allegedly omitted: "On or about March 31, 1995, Almacenes Riviera, by and through Jose Cordera [Jr.], executed an Option Purchase Contract for the acquisition of the [Real Property] for $1.9 million dollars." Docket # 14, p. 21, ¶ 4. But the same recitation appears almost verbatim on page eleven of the Opinion and Order, where it is stated that "[a]lso on March 31, 1995, Cordera [Jr.], in his capacity as vice president of Almacenes Riviera, executed an Option to Purchase Contract, in the name of Almacenes Riviera . . . for the acquisition of the [Real Property] for $1.9 million dollars." Adv. No. 05-00186, Docket # 460, p. 11.

To be fair, the bankruptcy court did omit a few facts the parties had proffered. The omissions, however, were either irrelevant to resolve the issues at hand or were ascertainable from the facts provided in the Opinion and Order. An on point example in this regard is the Trustee's contention that "[t]he bankruptcy court failed to mention that the name YSIEM is the first name of Meisy Perez, spelled in reverse." Docket # 14, p. 22, ¶ 8. Defendants' submission underscores the foregoing shortcomings (Docket # 19, pgs. 33-34), while the Trustee's, ignores them (see Docket # 20). Accordingly, the Court is in no position to conclude that any of the omissions at issue amounted to anything else than a harmless error.

*III. Statutes of Limitations*

The point of error concerning the bankruptcy court's application of the statute of limitations needs more elaboration. But a comprehensive exposition on the substantive aspect of fiduciary duty law is unnecessary; the few basic remarks that follow suffice.

One of the cornerstones of corporate law is that officers and directors of a corporation are obliged to be diligent and loyal in running all corporate affairs. And that failure to do so may give rise to a derivative suit against any of them. In Puerto Rico, such principles are explicitly contemplated in P.R. Law Ann. tit. 14, §§ 3563 and 3786, which together provide corporate shareholders with standing to file a derivative suit for fiduciary duty violations. At least one other jurisdiction has gone a step further, affording creditors standing to file a derivative action if the breach occurs while the corporation is insolvent. See N. Am. Catholic Educ. Programing Found., Inc., 930 A.2d 92. Regardless, the statute of limitations for a fiduciary duty violation claim expires three years from the time that the party with standing (the shareholder or the creditor) discovers the actionable facts "or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." Wal-Mart Stores, Inc. V. AIG Life Ins. Co., 860 A.2d 312, 319 (Del. 2004); see also P.R. Law Ann. tit. 32, § 261.

Basic remarks out of the way, the Trustee's attack on this flank has both a general and a specific prong. The general prong in turn encompasses a main argument and two fallback contentions, while the specific prong challenges the rulings surrounding the Real Estate transactions and the Purchase Agreement. The Court's analysis begins at the general end and evolves seriatim to the specific.

*a. The General Challenges*

The main argument at the general end is that the bankruptcy court could have used as many as to six different statutes of limitations, but incorrectly limited itself to the one with the shorter prescriptive time. See Docket # 14, pgs. 29-35. Several flaws afflict this argument,

however. First, it ignores the Trustee's post-trial submission to the bankruptcy court, where he advocated for the application of the shorter prescriptive period and never mentioned any of the alternative arguments raised now. See McCoy v. Massachusetts Inst. of Technology, 950 F.2d 13, 22 (1st Cir. 1991) (stating that "theories not raised squarely in the district court cannot be surfaced for the first time on appeal"). Moreover, throughout the bankruptcy proceedings, the Trustee litigated the claims within his first cause of action as fiduciary duty violations under Puerto Rico's law. The bankruptcy court went no further in its adjudication. Accordingly, this Court cannot, nor is it inclined to, sanction the Trustee's haste in looking elsewhere for additional breathing room at this late hour. See P.R. Tel. Co. v. Sprintcom, Inc., 662 F.3d 74, 98-99 (1st Cir. 2011). ("If claims are merely insinuated rather than actually articulated in the trial court, we will ordinarily refuse to deem them preserved for appellate review.").

Second, the argument obfuscates a simple issue and bypasses the well-settled principle of Puerto Rico law that only when deficiencies have been identified in a specific law may a court look elsewhere to fill any gaps. P.R. Law Ann. tit. 31, § 12; see also Cordova v. Simonpietri v. Crown American, 112 P.R. Dec. 797, 802 (1982). In this case, there is no dispute that Puerto Rico's corporate law specifically establishes a three-year statute of limitations for claims of fiduciary duty violations. P.R. Law Ann. tit. 32, § 261. The Trustee has provided the Court with nothing to determine that there is a deficiency on that legal provision, and there is no precedent alluding to one.

The Trustee's fallback arguments fare no better. At this end, the Trustee faults the bankruptcy court for allegedly failing to (1) establish the date of accrual for his fiduciary duty claims; and (2) toll the statute of limitations under the doctrines of "equitable tolling" and "adverse domination." Docket # 14, pgs. 29-35.[10] To support his first point, the Trustee argues

---

[10] Under the adverse domination doctrine, applicable statutes of limitations are tolled while the corporation is under the domination of culpable directors. See Cruz v. Carpenter, 893

that the causes of action for fiduciary duty violations accrued in 2004, when a report issued by a court-appointed examiner appraised creditors of the possible violations. Id. at p. 34. This contention, however, could hold water only if ARI had been insolvent when the transactions underlying this suit happened, so as to provide ARI's creditors with standing to assert claims for fiduciary duty violations. The bankruptcy court's opinion thoroughly established well-supported reasons for reaching the opposite conclusion, which the Trustee never challenged.

The Trustee's appellate submissions does assert in passing here and there that ARI was insolvent during the relevant time frame. Nevertheless, the Trustee nowhere develops the argument, points to relevant evidence of record contradicting the court's determination, or cites to any legal or technical authority on point. See DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 34 (1st Cir.2001)("[s]imply noting an argument in passing without explanation is insufficient to avoid waiver."); see also Hughes, 211 F.3d at 684 n.6. But even if the Trustee had pointed to some evidence of record from which the bankruptcy court could have drawn the conclusion that ARI was insolvent at the relevant time, ARI's multi-million dollar real estate holdings as well as the trial testimony of its accountant (among other evidence) would still support the contrary conclusion. And an imputation of "clear error" does not lie under such a scenario. See Anderson, 470 U.S. at 573 (finding no clear error where conclusion of the bankruptcy court and the facts underlying it were supported by the record).

The Trustee's tolling contentions also come thinly supported. His 75-page appellate brief devotes only a few pages to this issue, stating nowhere how the legal standard and the case law cited applies to the facts of the case. In other words, the Trustee invites this Court to revoke a thoroughly supported opinion with nothing more than a boilerplate recitation of a legal standard and a bunch of legal citations. Generally, way more is needed to mount a successful appeal. See CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1525-26 (1st Cir.1996) (three sentences with three undiscussed citations did not defeat

---

F2d. 84, 87 (5th Cir. 1990).

waiver), especially, where as here, the doctrines at issue apply sparingly, and only under exceptional circumstances. See Aresty Intern. Law Firm, P.C. v. Citibank, N.A., 677 F.3d 54, 58 (1st Cir. 2012) (noting that equitable tolling is sparingly applied); Askanase v. Fatjo, 130 F.3d 657, 666-67 (5th Cir. 1997) (discussing some of the strict requirements that must concur for adverse domination to apply under Texas' law).

The Trustee attempts to recover lost ground with his reply memorandum. There, he devotes a full paragraph to applying the adverse domination doctrine to the facts of the case and also attempts to refute some of Defendants' argument in opposition. Docket # 20, pgs. 23-25. The Trustee, however, ignores Defendants' contention that the adverse domination doctrine was never raised during the bankruptcy proceedings, and the Court has searched the record in vein for evidence to the contrary. The Trustee's arguments in reply therefore falters also. See P.R. Tel. Co., 662 F.3d at 98-99; McCoy, 950 F.2d at 22.

### b. The Specific Challenges

The specific prong of the Trustee's challenge revolves around the bankruptcy court's application of the statute of limitations to the Real Estate transaction and the Purchase Agreement. Concerning the Purchase Agreement, the Trustee aims again at the accrual date the bankruptcy court established, contending that ARI's "creditors were only made aware of the [Purchase Agreement] and its deleterious effect on the corporation when the Examiners's Final Report was placed on the record on April 2004." Docket # 14, p. 30. But, as stated above, the bankruptcy court's finding that ARI was solvent at the relevant time forecloses this argument.

Concerning the Real Estate transaction, the Trustee attacks the bankruptcy court's factual conclusion that Gonzalez, as one of ARI's shareholders had the requisite knowledge to file a derivative suit by 1997. Docket 14, pgs. 35-40.[11] To reach this conclusion, the

---

[11] The Trustee also argues that creditors learned about the Real Estate transaction in 2004. This argument, however, is not addressed for reasons that should be obvious by now.

16

bankruptcy court relied on Gonzalez's trial testimony that he thought the Real Estate transaction was a bad business idea; on the Release Letter Gonzalez signed waiving rights on YSIEM and allowing it to purchase the Real Property; on evidence of record showing that Gonzalez had participated in meetings where a possible long-term lease with Pep Boys had been disclosed; and on the fact that the lease agreement had been available in public records since 1997. Adv. No. 05-00186, Docket # 460, pgs. 27-30. The Trustee does not contend that those facts provide no support to the court's conclusion. Rather, as generally done through his appellate submissions, the Trustee provides the Court with a long list of facts he deems undisputed and, without weaving them into an argument in support, imputes error on the bankruptcy court. See Docket # 14, pgs. 36-38. Such a lackluster effort hardly needs much analysis to be discarded, especially when this Court finds that the evidence of record amply supports the conclusion that Gonzalez knew or should had known about the Pep Boy lease opportunity by 1997.

*IV. Illegal Payment of Dividends*

Next in line is the Trustee's point of error concerning the claims for illegal payment of dividends. The Trustee pled such a claim (and prosecuted it through the bankruptcy proceedings) under the legal framework applicable to fiduciary duty violations—that is, as a fiduciary duty violation. Nevertheless, under Puerto Rico law, claims for fiduciary duty violations and claims for illegal payment of dividends are completely different, each arising from separate, independent, and specific sources. The former springs from P.R. Law Ann. tit. 14, § 3563 while the genesis of the latter is found in P.R. Law Ann. tit. 14, § 3602. The elements of each cause action as well as the analytical framework and the case law applicable to them also differ.

All the same, the Trustee's claim on this issue is that Defendants breached their fiduciary duties because they allegedly paid illegal dividends. By presenting his claim in such a way, the Trustee submitted himself to a dual evidentiary burden, requiring first a positive

showing that Defendants paid illegal dividends, and then a second showing that Defendants' conduct constituted a breach of fiduciary duties. The bankruptcy court determined that the Trustee had failed to satisfy the initial burden, and thus discarded altogether the possibility of a fiduciary duty violation. Adv. No. 05-00186, Docket # 460, pgs. 44-46.

On appeal, the Trustee contends that the bankruptcy court applied the fiduciary duty legal framework incorrectly. Docket # 14, pgs. 40-42. To reach that issue, however, this Court would first have to determine that the bankruptcy court incorrectly ruled out the allegations about illegal dividends. The Trustee's appellate brief contains little on this point. In fact, the following passage illustrates the only remarks the Trustee made about this issue in his initial submission:

> Inmobiliaria, the payer of the dividends, had no income from outside the retail operations of the group. The evidence shows that ARI's retail operations became insolvent as of July 31, 1998. The [D]efendants . . . siphoned funds from ARI's insolvent retail operations and paid those funds through Inmobiliaria as dividends from the special partnership. These dividends were illegal under Puerto Rico law.

Docket # 14, p. 62. No legal authority or citation to the record accompanies these passing remarks. Furthermore, the Trustee neither explains why or how the factual conclusion that ARI was solvent in 1998 is erroneous nor directs the Court to the evidence of record contradicting the bankruptcy court's factual conclusion that Defendant's siphoned no funds. Although the Trustee's reply memorandum is a bit more elaborated, all his arguments still rest (without the requisite support) in the proposition that ARI was insolvent when the alleged dividends were paid in 1998. Unable to pass judgment upon that issue, this Court is in no position to second guess the bankruptcy court's conclusion regarding the Trustee's claim of fiduciary duty violations.

   *V. The Fifth Cause of Action*

The Trustee's fifth cause of action sought to avoid transfers ARI made to Maria Cordera ($130,000) and to Perez ($60,000) within one year of its bankruptcy filing. See Adv.

No. 05-00186, Docket # 147. He predicated this claim on 11 U.S.C. § 548, which affords the relief requested upon satisfaction of the following factors: "(1) a transfer of the debtor's property or interest therein; (2) made within one year of the bankruptcy filing; (3) for which the debtor received less than a reasonably equivalent value in exchange for the transfer; and (4) either (a) the debtor was insolvent when the transfer was made or was render insolvent thereby . . . ." Lassman v. Reilly (In re Feeley), 429 B.R. 56, 62 (Bankr. D.Mass. 2010) (quoting § 548). The bankruptcy court found the Trustee's proffer insufficient to meet the third and forth factors of the foregoing standard (see Adv. No. 05-00186, Docket # 460, pgs. 46-48); accordingly, the Trustee's appellate submission attacks that conclusion (see Docket # 14, pgs. 61 and 64).

On the third factor, the Trustee argues that Defendants advanced no evidence to show that they had provided equivalent value in exchange for the money received to ARI. Id.[12] The Trustee, however, bore the burden of proof, not Defendants. See Burdick v. Lee (In re Burdink), 256 B.R. 837, 839 (D.Mass. 2001) (stating that the burden of proof in this action lies with its proponent). Moreover, the bankruptcy court based its conclusion on trial testimony that the $130,000 paid to Maria Cordera constituted repayment of a loan she had provided in excess of that amount. See Adv. No. 05-00186, Docket # 460, p. 49. As well as on trial testimony stating that the $60,000 paid to Perez represented salary earned while she served as ARI's President. Id. p. 48.[13] The Trustee does not dispute that such testimony was presented, but rather directs this Court to contradicting trial testimony from his witnesses. See Docket # 20, pgs. 15-16. As stated above, on appeal, factual conclusions are reviewed for clear error, which calls for more than a showing that the record contains conflicting evidence.

---

[12] On the fourth factor, the Trustee provides nothing more that the already discarded perfunctory argument regarding ARI's insolvency; no discussion is developed on that front for that reason.

[13] The $60,000 were paid to Perez presumably over a ten-month period, in $6,000 monthly installments. Id.

See e.g., Anderson, 470 U.S. at 573 (finding no clear error where conclusion of the bankruptcy court and the facts underlying it were supported by the record).

*VI. The Sixth Cause of Action*

Lastly, the Trustee takes issue with the bankruptcy court's denial of his claim for collection of loans made to insiders. Docket # 14, pgs. 55-57. Premised on 11 U.S.C. § 542 (see Docket 147, ¶ 74), that claim required the Trustee to show that Defendants had borrowed the funds in question from ARI. The bankruptcy court, nevertheless, found the Trustee's efforts in this regard wanting, and thus denied his claim. Adv. No. 05-00186, Docket # 460, pgs. 49-50.

Here, the Trustee again contends, incorrectly, that the burden of proof for this claim rested with Defendants. See Docket # 14, p. 57; see also In re Weiss-Wolf, Inc., 60 B.R. 969, 975 (Bkrtcy. S.D.N.Y., 1986) (stating that the burden of proof under § 542 lies with the party invoking it). Then, he argues that the bankruptcy court erroneously weighed conflicting testimony provided by ARI's auditor and by the court-appointed examiner. Docket # 14, p. 56-57. From the Trustee's point of view, the bankruptcy court should have credited the examiner's testimony that outstanding accounting entries on ARI's books represented **possible** partner's drawings. Id. But even if credited, the mere possibility of a debt is insufficient to succeed under § 542. See 5-542 Collier on Bankruptcy ¶ 542.04 (16th ed. 2012). Therefore, the Trustee's challenge at this end also falls short.

**Conclusion**

For the reasons stated above, and because the Trustee failed to prove that the determinations on appeal seriously impaired the fairness, integrity, or public reputation of the judicial proceedings, the bankruptcy court's opinion is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 13th day of September, 2012.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge